UNITED STATES of America,
Plaintiff–Appellee,

v.

Billie M. KLINE, Defendant–Appellant.

No. 89–1181.

United States Court of Appeals,
Tenth Circuit.

Dec. 28, 1990.

Janine Yunker, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, on the briefs), Denver, Colo., for defendant-appellant.

James R. Allison, Asst. U.S. Atty. (Michael J. Norton, Acting U.S. Atty., Thomas M. O'Rourke, Asst. U.S. Atty., on the brief), Denver, Colo., for plaintiff-appellee.

Before SEYMOUR and ANDERSON, Circuit Judges, and COOK[1], District Judge.

H. DALE COOK, District Judge.

Both parties having waived oral argument, this court has examined the briefs and appellate record, and the cause is ordered submitted without oral argument.

A 31–count indictment was returned against the defendant on January 9, 1989. All of the counts alleged false claims to the government, in violation of 18 U.S.C. § 287. The defendant was convicted on ten counts and acquitted on the remaining counts. She filed in the district court a motion for judgment of acquittal or, in the alternative, for new trial as to five of the counts. The district court denied the motion and defendant timely appealed. For the reasons given below, we reverse.

18 U.S.C. § 287 provides:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

---

1. The Honorable H. Dale Cook of the United States District Court for the Northern, Eastern, and Western Districts of Oklahoma, sitting by designation.

To support a conviction thereunder, there must be proof (1) that the defendant knowingly made and presented to a department or agency of the United States a false, fraudulent or fictitious claim against the United States, and (2) that the defendant acted with knowledge that the claim was false, fraudulent or fictitious. *See United States v. Causey*, 835 F.2d 1289, 1292 (9th Cir.1987).

In reviewing the denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the government. If there is substantial evidence from which a jury might properly find the accused guilty beyond a reasonable doubt, we uphold the denial. *United States v. Peveto*, 881 F.2d 844, 860 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). At trial, the defendant orally moved for a judgment of acquittal as to all counts at the close of the government's case. She orally renewed the motion as to all counts at the close of the evidence. However, her post-verdict motion pursuant to Rule 29(c) F.R.Cr.P. only challenged the sufficiency of the evidence as to five of the counts of conviction. On appeal, defendant also challenges the sufficiency of the evidence as to the other five counts of conviction. This matters little, for we have held that even when waiver occurs, the standard is essentially the same as if there had been a timely motion. *See United States v. Bowie*, 892 F.2d 1494, 1496–97 (10th Cir.1990).

■ The defendant was employed periodically from 1982 through 1987 by Medical Services Group/Medical Consultants, Inc. (MSG), a medical clinic in Denver, Colorado. MSG provided physical therapy for patients with various musculo-skeletal problems. Therapy was usually administered at the clinic, which was located at various places in Denver during the relevant time period.

The United States Department of Health and Human Services (HHS) administers the Medicare Program. In Colorado, HHS had an agreement with Blue Cross and Blue Shield of Colorado under which that company receives and processes claims for Medicare payments. These payments are made with funds provided by HHS. Dr. Edward Whitney was the only physician employed by MSG. He would make medical recommendations which were implemented by medical assistants.

The Indictment alleged that the defendant presented various claims to HHS, requesting payment for medical services allegedly provided to MSG patients when in fact the services had not been provided as claimed. The counts of conviction may be divided into three groups: (1) Counts 1 and 2 relate to claims listing the defendant as the patient and refer to services allegedly provided in December, 1985 and March, 1986, (2) Counts 8–11 and 14 list defendant's father Lowell Hull as patient and refer to services allegedly provided in June, 1987, and (3) Counts 29–31 list defendant as patient and refer to services allegedly provided in August, 1987. The claim forms require reference to a "code book", called *Physicians' Current Procedural Terminology* (Govt. Ex. 44). Although it is not discernable from the face of the claim form, reference to the code book demonstrates that the types of therapy allegedly administered to the patients must be performed or supervised by a physician. The Government contended that in this respect the claims were false. Further, the Government contended that the claims were false because the "place of service" was billed as "3/office" when in fact MSG was closed during the relevant period (as to Counts 8–11, 14, and 29–31) or because the patient (the defendant herself) was in the hospital at the time of the alleged treatment (as to Counts 1 and 2).

Upon review, we find that there was insufficient evidence presented as to the first element of the offense, *i.e.*, that the defendant made and presented the claim forms. Robert Flak, the Medicare claims manager for Blue Cross and Blue Shield of Colorado, testified that there was no way to determine who had submitted a particular claim. *See* rec., Vol.II, at 67. As to Counts 1 and 2, defendant testified that she had no idea who did the billing (rec., vol. III, at 173). No evidence was presented of payment to the defendant, which would

have supported the inference that she did the billing. As to the other Counts, the defendant testified that the billing was either done by herself or Pam Archuleta. *See* rec., Vol.III, at 175. She testified that she did "hardly any" billing from 1983 to 1987 because the computer screen increased her grand mal seizure activity. (rec., Vol.III, at 161).

The testimony of Pam Archuleta further supports the defendant's position. Archuleta stated that she did the majority of the billing during the summer of 1987 (rec., Vol.II, at 112). She found it easy to make mistakes in billing. *Id.* at 110. Further, she testified that the defendant had trouble seeing the computer screen and hitting the right keys. *Id.* at 113–14. On the critical issue of the use of "3/office" in billing, Archuleta testified that she did not realize that there was a different billing for non-office visits, *Id.* at 122, and that she thought "3/office" was the only code available, which was her own mistake. *Id.* at 124. No additional evidence was adduced as to the first element. The government, both at trial (rec., Vol.III, at 152–53) and in its brief (Brief of Appellee at 16) asserts that the defendant was "in charge" of billing and that the billing was done at defendant's home. It is undisputed, however, that other workers who did billing had access to the billing office. The statute imposes liability on one who knowingly "makes or presents" a false claim to the United States. The indictment charges that the defendant "made and presented" such claims. Substantial evidence must do more than raise a mere suspicion of guilt. *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir.1987). We do not believe such evidence was presented here for a jury to properly find the first element established beyond a reasonable doubt. *A fortiori,* there was insufficient evidence of the second element, *i.e.,* knowledge of falsity by a defendant submitting false claims.

■■■ Even assuming that the requisite proof of the essential elements of the crime was presented, this court must reverse on another basis. The appellant did not designate the jury instructions, nor the district judge's reading of them, as part of the appellate record. However, we have reviewed the instructions and find that they include an instruction titled "Aiding and Abetting", which reads as follows:

> Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

> Whoever willfully causes an act to be done, which if directly performed by her or another would be an offense against the United States, is punishable as a principal.

> In other words, every person who willfully participates in the commission of a crime may be found to be guilty of that offense. Participation is willful if done voluntarily and intentionally, and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.

It is clear from the jury instruction conference that the trial court overruled defendant's objection to this instruction. *See* rec., Vol. III, at 243–45. 18 U.S.C. § 2 was not charged in the indictment. Conviction under 18 U.S.C. § 2(a) requires the existence of a principal perpetrator of the substantive offense. No evidence of such existence was presented to the jury. § 2(b), by contrast, punishes the individual who *causes* a criminal act, and the government need not prove that someone other than defendant was guilty of the substantive crime. *See Causey,* 835 F.2d at 1291–92. As best we can determine, the government's alternative theory of culpability was that the defendant caused the innocent Pam Archuleta to submit the false claims. However, as noted, the indictment only charges that the defendant "made and presented" the claims. No allegation of causation was made. In *United States v. Montoya,* 716 F.2d 1340 (10th Cir.1983), we held that an indictment alleging violations of 18 U.S.C. § 287 was not fatally flawed for failing to allege a violation of § 2(b), because an allegation of causation was present. *Id.* at 1343 n. 1. Such an allegation not being present here, the govern-

ment was not entitled to proceed on an aiding and abetting theory, and the giving of such an instruction was error. The conclusion is inescapable that the jury may have convicted on an improper basis. The defendant has not raised the issue of improper jury instructions before this court, but we find applicable the plain error doctrine of Rule 52(b) F.R.Cr.P., which we should raise on our own motion. *See United States v. Greschner*, 802 F.2d 373, 380 (10th Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). *See also United States v. Fagan*, 821 F.2d 1002, 1015 n. 9 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988) (court of appeals does not search the record for unassigned error, and contentions not raised on appeal are deemed waived, but an exception will be made where necessary to prevent a manifest miscarriage of justice).

The judgment of the district court is REVERSED, and the defendant's conviction is VACATED.