# UNITED STATES COURT OF APPEALS

**Filed 6/27/96**

## FOR THE TENTH CIRCUIT

———

UNITED STATES OF AMERICA, )
                                 )
    Plaintiff-Appellee, )
                                 )
v. )         No.95-5059
                                 ) (D.C. No. 94-CR-127-B)
JAIME OGAZ-NEVAREZ, )   (N. Dist. of Okla.)
                                 )
    Defendant-Appellant. )

———

## ORDER AND JUDGMENT[*]

———

Before **ANDERSON, BARRETT, and MURPHY,** Circuit Judges.

———

After examining the briefs and the appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Jaime Ogaz-Nevarez (Ogaz-Nevarez) appeals from his jury conviction of conspiracy to distribute 100 kilograms or more of marijuana, Count I, and possession of 100 kilograms or more of marijuana with intent to distribute, Count II.

### Facts

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

At trial, Ogaz-Nevarez's testimony as to the events leading up to his arrest is as follows. He contends that from August 22, 1994, through September 5, 1994, he visited El Paso, Texas, during which he admits that he knew Alberto Carreones (Carreones), an alleged coconspirator, from different bars and parties in Mexico and El Paso. Ogaz-Nevarez states that after he returned to his home in Tulsa, Oklahoma, Carreones contacted him and asked him to help a friend, Jamie Wood (Wood), who had car trouble with a white Lincoln Continental (the Lincoln) on the way to Tulsa.

Ogaz-Nevarez asserts that, although he received several phone calls from Wood, he was unable to understand the conversations because of his inability to understand the English language. He is a native born Mexican. He claims that many of the conversations were actually between Olivia Miranda (Miranda), the woman he was staying with in Tulsa, and Wood.

When Wood arrived in Tulsa, Ogaz-Nevarez met him at a Git-N-Go convenience store. He then had Wood follow him to his apartment where Wood parked the Lincoln. Ogaz-Nevarez alleges that he helped Wood obtain lodging for the evening and lent him $200. Ogaz-Nevarez contends that his only contact with the Lincoln occurred the next day, after he took Miranda to work, when he pulled the Lincoln forward approximately two to three feet so that it would be properly parked in the apartment parking lot. Soon thereafter, a search warrant was executed on the apartment and he was arrested.

At trial, the government offered a much different version of the events supported by the testimony of Wood, as follows. In September, 1994, Carreones contacted Wood and arranged for Wood to drive a shipment of marijuana from El Paso, Texas, to Tulsa, Oklahoma, for $7,000. Wood agreed and accompanied Carreones to the Howard Johnson's Motel in El Paso where he was introduced to "Oscar." Oscar was later identified as Ogaz-Nevarez. At the meeting between Carreones, Wood, and Ogaz-Nevarez, the details of transporting the marijuana were discussed and Carreones provided Wood with a telephone number where Ogaz-Nevarez could be reached in Tulsa. Thereafter, Carreones took Wood to 801 Luna Street, El Paso, Texas, where the Lincoln's trunk was loaded with marijuana. Wood also testified that in addition to what was loaded in the Lincoln, he saw 10-11 more blocks of marijuana in the garage at 801 Luna Street. (Tr. Vol. V at 153).

On September 7, 1994, at approximately 1:00 a.m., an Amarillo Police Officer stopped the Lincoln driven by Wood to investigate a faulty tag light. Thereafter, a drug dog alerted to the trunk of the Lincoln where officers found approximately 290 pounds of marijuana. At this point, Wood became a cooperating government witness.

With the aid of Amarillo narcotics officers, Wood called Ogaz-Nevarez to explain that his arrival in Tulsa would be delayed due to car trouble. The officers then accompanied Wood to Tulsa to

complete a controlled delivery of the marijuana.

At midnight on September 7, 1994, Wood placed a recorded call to Ogaz-Nevarez's phone number during which he spoke to a Hispanic man and a Hispanic women. He also received directions to a Git-N-Go convenience store located in south Tulsa. Wood again called Ogaz-Nevarez from the Git-N-Go and was told by a Hispanic female that they would meet him there shortly. At approximately 12:35 a.m., Wood followed Ogaz-Nevarez and Miranda to the apartment and gave Ogaz-Nevarez the keys to the Lincoln. Ogaz-Nevarez rented Wood a room for the night at a nearby hotel and made arrangements for Wood to be picked up in the next day, presumably, when Carreones was arriving.

In addition, the government asserts that during the early morning hours, approximately 4:00 a.m., Ogaz-Nevarez left the apartment, went to the parking lot, and examined the Lincoln. At approximately 8:00 a.m., Ogaz-Nevarez and Miranda left the apartment in their other vehicle. Ogaz-Nevarez returned shortly thereafter, moved the Lincoln a few feet forward, and entered the apartment.

When the search warrant was executed, the officers recovered the key to the Lincoln from a pair of mens shorts lying on the floor of the bathroom where Ogaz-Nevarez was showering, as well as various documents establishing Ogaz-Nevarez's presence in El Paso around the end of August and early September, 1994.

- 4 -

On October 7, 1994, the grand jury returned an indictment charging Ogaz-Nevarez with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana (Court I), in violation of 21 U.S.C. § 846, and possession of 100 kilograms or more of marijuana with intent to distribute (Court II), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii).

After a four day jury trial, Ogaz-Nevarez was convicted of both counts. On March 8, 1995, he was sentenced to 63 months imprisonment on each count, to run concurrently, and fined $2,000.

## Issues

On appeal, Ogaz-Nevarez contends that: (1) there was insufficient evidence to convict him of conspiracy to possess with the intent to distribute or of possession with intent to distribute 100 kilograms or more of marijuana; (2) the district court erred in allowing the government to use a preemptory challenge to dismiss one of the jury veniremen; and (3) the district court erred in allowing the government to introduce 404(b) evidence.

## Discussion

### I. Sufficiency of the Evidence

Ogaz-Nevarez contends that there was insufficient evidence to convict him of conspiracy to possess with intent to distribute 100 kilograms or more of marijuana or of possession with intent to distribute 100 kilograms or more of marijuana. Ogaz-Nevarez alleges that the government failed to establish that he knew

anything about the alleged conspiracy or that he knew anything about the marijuana discovered in the Lincoln. Ogaz-Nevarez argues that the government cannot rely solely on the uncorroborated testimony of a coconspirator, Wood.

"In reviewing the sufficiency of evidence to sustain a jury's guilty verdict, we examine the evidence in the light most favorable to the government in order to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt." United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994), cert. denied, ___ U.S. ___ (1995) (internal quotation omitted). In making this determination, we review the record de novo. United States v. Sloan, 65 F.3d 861, 863 (10th Cir. 1995), cert. denied, ___ U.S. ___ (1996).

We will not reverse a conviction merely because the verdict was grounded on the uncorroborated testimony of a coconspirator. See United States v. McGuire, 27 F.3d 457, 462 (10th Cir. 1994) (the general rule is that in a criminal case a jury may convict a defendant on the uncorroborated testimony of an accomplice). Therefore, the fact that the government may have relied solely on the testimony of Wood, a coconspirator/accomplice is irrelevant to our inquiry into the sufficiency of the evidence.

### A. Conspiracy

In order to sustain a conviction for conspiracy, the government must show that there was an agreement to

> violate the law, that the defendant knew the essential objectives of the conspiracy, and that the defendant knowingly and voluntarily took part in the conspiracy, and that the coconspirators were interdependent.

United States v. Anderson, 981 F.2d 1560, 1563 (10th Cir. 1992). An alleged conspirator must have a "general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator." United States v. Evans, 970 F.2d 663, 670 (10th Cir. 1992), cert. denied, 507 U.S. 922 (1993). It is not enough for the government to show only "mere association" with conspirators or "casual transactions" between the defendant and conspirators. Id. at 669. The government must show, by clear and unequivocal evidence, Ogaz-Nevarez's knowledge that the object of the conspiracy was the distribution of marijuana and his agreement to cooperate in achieving that object. See Anderson, 981 F.2d at 1564 (quoting United States v. Austin, 786 F.2d 986, 988 (10th Cir. 1986)). However, "[a] jury may presume the defendant is a knowing participant in the conspiracy when he acts in furtherance of the objective of the conspiracy." United States v. Brown, 943 F.2d 1246, 1250 (10th Cir. 1991).

Upon review of the record, we hold that the evidence is more than adequate to support Ogaz-Nevarez's conspiracy conviction. At trial, the government relied on the testimony of coconspirator Wood. Wood testified that he and Carreones discussed transporting a large amount of marijuana from El Paso, Texas, to Tulsa, Oklahoma, Tr. Vol. IV at 86; he met with Carreones and Ogaz-Nevarez

in El Paso regarding transporting the marijuana, id. at 87; Carreones agreed to pay him $7,000 to transport the marijuana with payment to be received when he reached Ogaz-Nevarez's house in Tulsa, id. at 88; Ogaz-Nevarez was present when Carreones gave him the phone numbers where he could reach Ogaz-Nevarez in Tulsa, id. at 91; Carreones told him to call Ogaz-Nevarez at those phone numbers when he reached Tulsa and that he was to take the shipment of marijuana to Ogaz-Nevarez's house, id.; Ogaz-Nevarez repeated that he was to call those phone numbers immediately upon reaching Tulsa, id.; and Carreones took him to 801 Luna Street, El Paso, Texas, where Carreones and Julio loaded the Lincoln's trunk with approximately 290 pounds of marijuana. Wood further testified that once in Tulsa, he called Ogaz-Nevarez and followed Ogaz-Nevarez to Ogaz-Nevarez's apartment. At the apartment, Wood testified that Ogaz-Nevarez asked for the keys to the Lincoln; therefore, he gave Ogaz-Nevarez the ignition key to the Lincoln, id. at 117, and told Ogaz-Nevarez that the trunk key was "in the seat inside the car." Id. at 118.

Based on the foregoing evidence and the reasonable inferences drawn therefrom, a reasonable jury could find Ogaz-Nevarez guilty of conspiracy to possess with intent to distribute 100 kilograms or more of marijuana beyond a reasonable doubt.

## B. Possession

In order to support a conviction of possession of narcotics

with intent to distribute in violation of 21 U.S.C. § 841(a)(1), the evidence must prove beyond a reasonable doubt that: "(1) the defendant knowingly possessed the illegal drug, and (2) the defendant possessed the drug with the specific intent to distribute it." United States v. Gonzales, 65 F.3d 814, 818 (10th Cir. 1995), petition for cert. filed, 64 U.S.L.W. 3692 (U.S. Apr. 4, 1996) (No. 95-1605). A conviction for possession with intent to distribute a controlled substance may be supported by a finding of constructive possession. United States v. Jones, 49 F.3d 628, 632 (10th Cir. 1995). "'Constructive possession may be found if a person knowingly has ownership, dominion *or* control over the narcotics and the premises where the narcotics are found.'" Id. (quoting United States v. Coslet, 987 F.2d 1493, 1495 (10th Cir. 1993) (emphasis original). "Dominion, control, and knowledge, in most cases, may be inferred if a defendant had exclusive possession of the premises." United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994).

Based on the evidence presented, we hold that a reasonable jury could have found that Ogaz-Nevarez had possession of the marijuana due to his dominion and control over the Lincoln. It is undisputed that Ogaz-Nevarez had exclusive possession and control over the keys to the Lincoln which was parked at his residence. In addition, based on Wood's testimony, a jury could reasonably infer that Ogaz-Nevarez knew of the marijuana in the trunk.

## II. Preemptory Challenge

Ogaz-Nevarez contends that the district court erred in allowing the government to use a preemptory challenge to dismiss the only jury veniremen of color "that would have known the feeling of isolation, the difficulty in communication and the feelings of frustration involved in being an alien in a foreign land."

During voir dire, the government utilized its last preemptory challenge to dismiss prospective juror Malabika Sen (Sen). Ogaz-Nevarez objected on the grounds that Sen was "the only person of color on the whole jury." (Tr. Vol. IV at 62). The district court observed that Sen was a woman from India with an appearance of Indian heritage, but that she was not of Hispanic origin. Id. Upon inquiry from the court, the government responded that it was its practice to dismiss prospective jurors who work in the social services field, as Sen did. Id.

Under Batson v. Kentucky, 476 U.S. 79 (1986), the government is prohibited from using preemptory challenges to remove members of the venire panel based on race. However, to prevail under Batson, a defendant must establish a prima facie case of purposeful discrimination in the selection of the petit jury by showing that: (1) he is a member of a cognizable racial group; (2) the government exercised its preemptory challenges to remove venire members of the defendant's race; and (3) the facts and any other relevant circumstances raise an inference that the prosecutor used his

preemptory challenges to exclude veniremen from the jury on the basis of their race. Id. at 96. Only after the defendant has established a prima facie case does the burden shift to the prosecutor to make a clear and reasonably specific explanation for challenging the minority juror. Id. at 97.

In United States v. Johnson, 941 F.2d 1102 (10th Cir. 1991), we concluded that where the prosecutor offers a race neutral explanation for his preemptory challenge and the trial court ruled on the ultimate issue of intentional discrimination, the preliminary question of whether a defendant has actually made a prima facie of discrimination is moot. See Sledd v. McKune, 71 F.3d 797, 800 (10th Cir. 1995). Therefore, while it appears that Ogaz-Nevarez has failed to establish a prima facie case because he is of Hispanic origin and the challenged venireman, Sen, is of Indian origin, that issue is moot and we must proceed to consider the explanation offered by the government for striking Sen and the district court's acceptance thereof.

In reviewing a Batson challenge, we analyze the prosecutor's explanation for his actions as a legal issue de novo. Johnson, 941 F.2d at 1108. At this step in the inquiry, the issue is the facial validity of the prosecutor's explanation. Id. (quotation omitted). Therefore, unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Id. Next, we review the district court's ultimate

factual rulings on whether the prosecutor intentionally discriminated for clear error.  Id.

After reviewing the record, we agree with the district court that the government provided a valid race-neutral reason for excluding Sen.  We are not left with a definite and firm conviction a mistake was committed.  Therefore, we hold that the district court's ruling is not clearly erroneous and the government's preemptory challenge was exercised in a constitutionally permissible manner.

## III.  404(b) Evidence

Ogaz-Nevarez contends that the district court erred in allowing the government to introduce 404(b) evidence regarding the 140 pounds of marijuana that was seized from 801 Luna Street, El Paso, Texas, after he was arrested.[1]  Ogaz-Nevarez argues that there was no evidence presented at trial that he knew of the 140 pounds of marijuana so seized and that, even if this evidence is

---

[1]    Federal Rule of Evidence 404(b) provides that:

**(b) Other crimes, wrongs, or acts.**  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of such evidence it intends to introduce at trial.

relevant, it should be excluded because its probative value is outweighed by its prejudicial effect.

We review a district court's evidentiary rulings for an abuse of discretion. United States v. Record, 873 F.2d 1363, 1373 (10th Cir. 1989). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifest a clear error of judgment." Cartier v. Jackson, 59 F.3d 1046, 1048 (10th Cir. 1995).

It must be remembered that rule 404(b) applies only to evidence of other crimes, wrongs, or acts extrinsic to the crimes charged. Fed. R. Evid. 404(b) (emphasis added). See United States v. Orr, 864 F.2d 1505, 1510 (10th Cir. 1988). "An uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted, or if it was "inextricably intertwined" with the charged crime such that a witness' testimony 'would have been confusing and incomplete without mention of the prior acts.'" Record, 873 F.2d at 1372 n.5 (quoting United States v. Richardson, 764 F.2d 1514, 1521-22 (11th Cir.), cert. denied, 474 U.S. 952 (1985)) (internal citation omitted).

The district court concluded that the evidence of the 140 pounds of marijuana found at 801 Luna Street was not extrinsic 404(b) evidence, but "[was] all part and parcel and intrinsic to the alleged conspiracy." (Tr. Vol. V at 155-57). In overruling

- 13 -

Ogaz-Nevarez's objection, the district court stated that:

> I am very convinced after hearing the testimony of Mr. Wood wherein he identified at the time he left the garage there at 801 Luna in El Paso, Texas with the 294 pounds of marijuana in the trunk of the white Lincoln he was driving, he indicated that the approximately 140 pounds of marijuana, in the ten bales that were left behind, was there at that time, that that [sic] makes it intrinsic to our factual scenario in the instant matter and therefore takes it out of the character of 404(b), and I think it's clearly part and parcel of the evidence in this case . . .

(Tr. Vol. VI at 324). We agree.

Therefore, we hold that the district court did not abuse its discretion in admitting the evidence regarding the 140 pounds of marijuana seized at 801 Luna Street, El Paso, Texas.

We also reject the assertion that the district court abused it discretion in refusing to exclude the evidence on the basis that its probative value was substantially outweighed by unfair prejudice. <u>See</u> Fed. R. Evid. 403. At trial, Ogaz-Nevarez failed to object to this evidence of the grounds of prejudice. Thus, he waived this argument, unless we should concluded that it was plain error. <u>See</u> <u>Orr</u>, 864 F.2d at 1511 n.6. Nothing in the record or in Ogaz-Nevarez's arguments indicates that the district court's determination was so erroneous as to constitute plain error.

**AFFIRMED.**

Entered for the Court:

James E. Barrett,
Senior United States
Circuit Judge

- 14 -