**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Troy BULLOCK a/k/a Larry
Allen Tate, Defendant–Appellant.**

**No. 89–7066.**

United States Court of Appeals,
Tenth Circuit.

Sept. 20, 1990.

Sheldon J. Sperling, Asst. U.S. Atty. (John Raley, U.S. Atty., with him on the brief), Muskogee, Oklahoma, for plaintiff-appellee.

Gene V. Primomo of Wilcoxen & Wilcoxen, Muskogee, Okl., for defendant-appellant.

Before MOORE, SETH and ANDERSON, Circuit Judges.

SETH, Circuit Judge.

Defendant William Troy Bullock, a/k/a Larry Allen Tate, and two co-defendants were charged in a 14-count indictment stemming from their operation of an amphetamine manufacturing laboratory in Oklahoma, and distribution of the drug. In this appeal, Bullock challenges his convictions on Counts 2 and 9 of the indictment: Count 2 charged a violation of 18 U.S.C. § 371, alleging that defendants conspired to, inter alia, "knowingly and intentionally use or carry firearms in the commission of [various] drug trafficking crimes" in violation of 18 U.S.C. § 924(c); Count 9 charged a violation of 18 U.S.C. §§ 2 and 924(c) for knowingly using or carrying firearms unlawfully "during the commission of a drug trafficking [crime]." For the reasons that follow, we affirm defendant's convictions.

The defendant Bullock argues that the language of Counts 2 and 9 of the indictment is fatally deficient in that it does not precisely use the language of § 924(c), i.e., the use or carrying of firearms was during "and in relation to" a drug trafficking crime. Bullock submits the addition of the "during and in relation to" language by the 1984 amendment to § 924(c) established a new element necessary for conviction and that because this exact language was not a part of Counts 2 and 9, the indictment is fatally deficient in stating an offense.

█ We note that this challenge to the adequacy of the indictment is made for the first time on appeal, but this court has held "that the failure of an indictment to state an offense is a fatal defect that may be raised at any time. Nonetheless, the countervailing interest in judicial efficiency requires that tardily-challenged indictments be construed liberally in favor of validity." *United States v. Freeman*, 813 F.2d 303, 304 (10th Cir.1987) (citations omitted). In that case we also stated that an indictment

"must be sufficient to apprise the accused of the nature of the offense so that he may adequately prepare his defense. Following conviction, the record

of the case must be sufficient so as to enable the accused to subsequently avail himself of the form of jeopardy for future prosecution for the same offense." *Id.* at 304–305.

█ Having reviewed the record and the language of the indictment at issue in light of the standards set out in *Freeman*, the indictment here, which charged defendants with using or carrying firearms "in the commission of the drug trafficking crimes listed" and with assembling the collection of weapons to protect and defend the drug laboratory, was sufficiently specific and descriptive. This is notwithstanding that the indictment did not quote the precise language used in § 924(c); that is, the use of firearms during "and in relation to" the drug trafficking crime. An indictment, of course, need not quote the statutory language to be legally sufficient. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). *See* the admonition to apply "practical considerations" in *United States v. Phillips*, 869 F.2d 1361 (10th Cir.1988). *See also United States v. Staggs*, 881 F.2d 1527 (10th Cir. 1989).

### As To Count 2

In any event, as mentioned, the indictment in its preliminary portion used the following language:

"COUNT 2

"18 USC (§ 371)
"A. *Objects of the Conspiracy*

. . . .

"To knowingly and intentionally use or carry firearms in the commission of the drug trafficking crimes listed below, in violation of Title 18, United States Code, Section 924(c); . . . ."

The charge was thus to use or carry a firearm in the commission of the crime charged—*conspiracy* to manufacture and possess amphetamine. This firearms use is not directed to a substantive offense but, again, a conspiracy. This conspiracy is further described in the indictment, Count 2, as follows:

"B. *Means of the Conspiracy*

"The objects of the conspiracy were to be accomplished and were accomplished as follows:

"Defendants ... traveled from the State of Texas to the Eastern District of Oklahoma to attempt to manufacture, manufacture, and/or possess with intent to distribute amphetamine....

"In an attempt to secure the clandestine laboratory and the operators thereof, in December 1988 in Johnston County, Eastern District of Oklahoma, the defendants assembled, possessed, and/or maintained a substantial number of firearms and inventory of ammunition in and near various buildings at or near the laboratory site."

The use, purpose and connection of the firearms with the conspiracy is so described—to secure the laboratory. The indictment continued as to the overt acts in Count 2:

"C. *Overt Acts*

"To effect the objects of the conspiracy, the defendants, and others to the Grand Jury unknown, committed diverse, overt acts within the Eastern District of Oklahoma and elsewhere, among which were the following:

. . . .

"(3) From on or about August 1, 1988, through on or about December 14, 1988, the defendants, LARRY ALLEN TATE, DOUGLAS LESLIE PERRY, and RICHARD PATRICK CARTER assembled, maintained, and/or possessed a group of approximately 32 firearms, many of which were loaded, ammunition for such firearms, and parts of various firearms on property in Johnston County, Eastern District of Oklahoma, which was searched pursuant to a search warrant by law enforcement authorities on or about December 14, 1988."

The indictment in Count 2 asserts as to the firearms that they were "knowingly and intentionally use[d] ... in the commission of the drug trafficking crimes." It does not use the statutory language added in 1984—the use or carrying of a firearm "during and in relation to" a drug trafficking crime. It appears to us that the charge to "intentionally use or carry firearms *in the commission* of the drug trafficking crimes" is more than adequate. It is a more direct charge than the statutory language of use and carrying "during and in relation to any drug trafficking crime," and *includes* such a connection.

The *use in the commission* of the crime was described in Count 2 of the indictment as quoted above to "attempt to secure the clandestine laboratory and the operators thereof."

*As to Count 9*

Count 9 charges the use of a firearm under 18 U.S.C. § 924(c) in drug crimes which are substantive offenses—manufacture of amphetamine and possession of amphetamine with intent to distribute.

The charge in this count is different from that in Count 2. It uses the original statutory language of "knowingly used or carried firearms unlawfully *during* the commission of a drug trafficking felony." Thus in Count 9 the wording is "used ... during the commission," while in Count 2 it was "use ... in the commission of...." In neither appeared the "in relation to" language used.

■ As to Count 9 of the indictment the proof shows that defendant was sitting or lying on a bed in the house with a loaded shotgun on the bed a few feet away. He also had a baggie of amphetamine in his hand. The crux of Bullock's challenge to his conviction for "using or carrying" a firearm during the commission of a drug trafficking crime, as charged in Count 9 of the indictment, is based on the fact that he did not have a firearm on his person at the time he was arrested. He submits that mere presence of firearms is insufficient to satisfy the elements of § 924(c); in support, he relies on what he characterizes as the "deliberately" narrow language of that provision. Bullock submits that the 1984 amendment to the language of § 924(c), which added the "during and in relation to" language, created a new element under that provision and thereby evinced a Con-

gressional intent that mere possession alone is not sufficient for a conviction under that provision. We do not agree with Bullock's view that the 1984 amendment to § 924(c) added a new element to the offense which must be specifically alleged but instead refined a factor already in the statute with no change in meaning when the "used" element is considered. *See United States v. Stewart,* 779 F.2d 538 (9th Cir.).

■ Bullock, as to his point relating to Count 9 that he did not have a firearm on his person or did not "use" one, relies heavily on *United States v. Theodoropoulos,* 866 F.2d 587 (3d Cir.), and *United States v. McKinnell,* 888 F.2d 669 (10th Cir.), in support of his claim that more than the mere presence is necessary to support a conviction for violation of § 924(c).

The fact that Bullock did not have a firearm on his person at the time he was arrested does not preclude a conviction for violation of § 924(c) because he *used* the firearm—the shotgun. This is the important element in this case.

In *Theodoropoulos,* the Third Circuit said:

> "In this case, the presence of a loaded shotgun in plain sight ... where it was readily accessible to the occupants was evidence that the firearm was in use during and in relation to the drug trafficking conspiracy proven in this case."

866 F.2d at 597.

Bullock also relies on *United States v. McKinnell,* 888 F.2d 669 (10th Cir.), insofar as it cites to *Theodoropoulos.* However, the holding in *McKinnell* actually supports affirmance of Bullock's conviction. Although *McKinnell* can be distinguished from the instant case, as it was an auto case, its discussion of § 924(c) and what is to be considered in determining whether its elements are satisfied is instructive here. In *McKinnell* we agreed with the view of the Eighth Circuit, "that the 'uses' element of section 924(c)(1) is met when the defendant has 'ready access' to the firearm and the firearm 'was an integral part of his criminal undertaking and its availability increased the likelihood that the criminal undertaking would succeed.'" *McKinnell,* 888 F.2d at 675 (quoting *United States v. Matra,* 841 F.2d 837, 843 (8th Cir.)). *See especially* the treatment of "carrying" in § 924(c) in *United States v. Cardenas,* 864 F.2d 1528 (10th Cir.).

It appears from the above cited cases that courts addressing the question of what facts and circumstances will satisfy the elements of § 924(c) have been consistent in holding that one need not have a firearm on one's person for a conviction under that provision as defendant urges. *See also United States v. Lyman,* 892 F.2d 751 (8th Cir.); *United States v. Meggett,* 875 F.2d 24 (2d Cir.); *United States v. Robinson,* 857 F.2d 1006 (5th Cir.).

The undisputed facts of this case demonstrate that although Bullock did not have a firearm on his person at the time of the raid on the laboratory, there were guns in virtually every room of the house, and a loaded shotgun was on the bed within a few feet of defendant, who also had a baggie of powdered-out amphetamine in his hand. The firearms were thus "used." The firearms were charged in Count 9 as *used* in the commission of the drug crimes. If they were used in the commission of the crimes they were certainly used "in relation to" the crimes. The charge is in equivalent language to the statutory language, and this is sufficient. The proof to be considered in this late challenge to the indictment showed the "use" of the weapon which necessarily was considered by the grand jury.

### Sufficiency of Proof Generally

Defendant asserts that the proof fails to establish the necessary elements for conviction under Counts 2 and 9 of the indictment.

He does not deny that he was a participant in the amphetamine manufacturing and distribution operation, nor does he dispute that there were a number of firearms (including shotguns, sawed-off shotguns, rifles and handguns) found throughout the house, outbuildings, and in vehicles parked outside the house. It appears from the

record that most of the firearms were loaded. Nevertheless, Bullock submits he cannot be convicted on Counts 2 and 9 of the indictment because there was no evidence of an agreement among the defendants to use the guns for anything other than hunting and sport shooting. Again, he points out that he did not have a gun on his person at the time of arrest, unlike his co-defendants who were carrying loaded handguns at the time of arrest.

Bullock's argument with respect to the conspiracy conviction as such obtained in Count 2 of the indictment ignores the testimony from one co-defendant that the group had discussed using the guns if necessary to protect their drug operation from being "ripped-off", but the group also had decided that the guns would not be used in the event of a police raid. Thus, contrary to Bullock's assertion, there was substantial evidence presented from which the jury reasonably could find that the guns were not possessed solely for hunting and sport purposes, and that there had been an agreement to use the firearms if necessary to protect the drug manufacturing and distribution operation from everyone except law enforcement officers. In sum, we find that the testimony of the co-defendant was substantial evidence upon which the jury could convict Bullock for the conspiracy charged in Count 2 of the indictment.

We must conclude that the indictment as to both counts contested in this late challenge are adequate to meet the requirements of *Freeman* which includes any constitutional issues. We conclude also that the proof was sufficient to support the conviction.

AFFIRMED.