FILED
United States Court of Appeals
Tenth Circuit

March 22, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LADELL FITZGERALD PACE,

      Defendant - Appellant.

No. 11-6163
(D.C. No. 5:10-CR-00081-F-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN,** and **MATHESON**, Circuit Judges.

In May 2010, a jury convicted Ladell Fitzgerald Pace of various drug crimes, including possession with intent to distribute crack cocaine. The federal district court sentenced him to serve concurrent terms of 48 months and 228 months in prison. [Aple. Br. at 2–3]

---

[*]After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On direct appeal from his conviction and sentence, Mr. Pace argues that the district court committed two errors. First, he contends that the court erred in allowing the prosecution to present "bad acts" evidence at trial in violation of Rule 404(b) of the Federal Rules of Evidence. Second, he argues that the court miscalculated the drug quantity used to determine his sentence under the U.S. Sentencing Guidelines. [Aplt. Br. at 2, 14]

Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I. BACKGROUND

In January 2010, police arrested Mr. Pace in connection with an investigation of Robert Pearson, an Oklahoma City drug dealer. Working with the Oklahoma City Police Department, Federal Bureau of Investigation agents initiated a wiretap on Mr. Pearson's phone and began video surveillance of his automotive repair shop in August 2009. [Tr. at 143–44, 166–67] During the investigation, agents obtained pictures of Mr. Pace frequenting Mr. Pearson's shop, as well as recordings of telephone conversations between the two men. [*Id.* at 158, 173]

On March 2, 2010, a grand jury indicted Mr. Pace on five counts. The indictment included two counts of violating 21 U.S.C. § 843(b) for knowingly and intentionally using a telephone to facilitate the acquisition of approximately 1/4 ounce of crack cocaine (Counts 1 and 3). Mr. Pace also was indicted on three counts of violating 21 U.S.C. § 841(a)(1) for knowingly and intentionally possessing with intent to distribute 1/4 ounce

of crack cocaine (Counts 2, 4, and 5).

Before trial, the prosecution filed a Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b). [Aple. Br. at 2] According to the notice, prosecutors intended to call six witnesses who would testify to buying crack from Mr. Pace. Prosecutors argued that the purpose of the testimony was to show Mr. Pace's motive, intent, and knowledge regarding the crimes listed in the indictment. [Aplt. Br. at 17] Mr. Pace objected, arguing that the witnesses' testimony would be irrelevant and unfairly prejudicial, but the district court overruled his objection. [*Id.*] At the close of the prosecution's case, Mr. Pace reasserted his "entire 404(b) motion for it to be preserved on appeal." Trial Tr. at 433.

At trial, Mr. Pearson testified that he sold crack cocaine to Mr. Pace 15 to 20 times over a period beginning in the fall of 2008 and leading up to Mr. Pearson's arrest in October 2009. [Tr. at 246–48, 257] Mr. Pearson listened to the telephone recordings admitted into evidence, identified himself and Mr. Pace as the speakers, and explained to the jury the code words Mr. Pace used to signal he wanted to buy drugs. [*Id.* at 267–98] Mr. Pearson testified that he sold crack to Mr. Pace in various quantities. [*Id.* at 257–58, 263]

The prosecution presented six other witnesses at trial, five of whom testified that Mr. Pace had given or sold crack to them at various times dating back to 2008. The first witness, Christine Madman, began living with Pace around November 2008. [Tr. at 5–6] She testified that from November 2008 until February 2009, Mr. Pace sold between $500

and $2,000 worth of crack per day. [*Id.* at 70–71, 74] She claimed that Mr. Pace obtained crack from Mr. Pearson and other crack suppliers in Dallas, Texas, and that Mr. Pace sold the drugs to her and several others during the time she lived with him. [*Id.* at 40–42, 92, 11]

Another witness, Kimberly Tripp, testified that she lived briefly with Mr. Pace in late 2008 and received crack from him on a daily basis. [*Id.* at 111–12] She testified that Mr. Pace asked her whether she knew of any new sources of crack. Ms. Trip testified that Mr. Pace also needed help fixing his truck. According to Ms. Tripp, she then introduced Mr. Pace to Mr. Pearson, who worked at an automotive shop. [*Id.* at 119]

Another witness, Nickhole Henderson, testified that she lived with Mr. Pace for six months, beginning in January 2008. She said that Mr. Pace gave her crack every day and that she smoked $200 worth of crack daily. [*Id.* at 212–13, 209] She testified that she saw Mr. Pace sell drugs to other women in the area as well, including Ms. Tripp. [*Id.* at 214–15] Ms. Henderson also testified that she had accompanied Mr. Pace on four separate trips to Dallas. [*Id.* at 212]

A fourth witness, Elizabeth Jines, testified to buying crack from Mr. Pace. She testified that from late 2008 until May 2009 she gave Mr. Pace thousands of dollars for crack and saw others, including Ms. Henderson and Ms. Madman, purchase crack from him. [*Id.* at 365–66, 374–75, 370] Ms. Jines claimed that on one occasion at Mr. Pace's home she overheard Mr. Pace and Mr. Pearson discuss quantities of crack. [*Id.* at 371–72] Ms. Jines testified that she stopped buying crack in May 2009 but continued to take

others to Mr. Pace's house to buy crack for themselves. [*Id.* at 373–74]

A final witness, Thomas Wornick, also testified to buying crack from Mr. Pace. Mr. Wornick testified that he began renting the house next to Mr. Pace's in July 2009, and that two months later he asked Mr. Pace to sell him "a 40." [*Id.* at 397, 401–02] He said Mr. Pace then gave him "two stones and some crumbs" of crack in exchange for $40. *Id.* at 403. Mr. Wornick said he then began purchasing crack from Mr. Pace for others, sometimes "two, three, four times a day," until Mr. Pace was arrested in January 2010. *Id.* at 404.

A witness for the defense, Tara Sczurek, testified that she moved in with Mr. Pace and Ms. Madman in late 2008 but never saw evidence of drug dealing. [Aplt. Br. at 11–12] Rather, she testified that Mr. Pace encouraged the other women to stop using crack. [*Id.* at 12]

The jury found Mr. Pace guilty on all five counts of the indictment. [Aple. Br. at 2] At sentencing, the federal district court found "that [Mr. Pace was] accountable for far more than 840 grams of [crack]." Sent. Tr. at 77. The judge based this finding on the testimony of the witnesses who claimed to have purchased crack from Mr. Pace. [*Id.* at 73–77] To avoid double counting the crack attributable to Mr. Pace, the court disregarded the amount of drugs that Mr. Pearson testified he had sold to Mr. Pace. [Sent. Tr. at 73]

Under the 2010 Sentencing Guidelines (the "Guidelines"), Mr. Pace's total offense level was 36 and his criminal history category was II. [Aple. Br. at 2] Accordingly, his

advisory Guidelines range was 210 to 262 months of imprisonment.  [*Id.*]  The district court sentenced Mr. Pace to 228 months of imprisonment on Counts 2, 4, and 5, and to 48 months of imprisonment on Counts 1 and 3.  Mr. Pace is serving the terms concurrently.  [*Id.* at 2–3]

The district court entered judgment on June 13, 2011.  On June 17, 2011, Mr. Pace filed a timely notice of appeal.

## II. DISCUSSION

Mr. Pace raises two challenges to his trial and sentencing.  First, he contends that "[t]he district court erred in allowing a surfeit of 'bad acts' evidence under Rule 404(b) which resulted in a fundamentally unfair trial."  Aplt. Br. at 15.  Second, he argues that by relying on this 404(b) evidence, the court miscalculated his sentence under the Guidelines.  [*Id.* at 14]  We address each argument in turn.

### A. *404(b) Evidence*

Mr. Pace argues that the district court should have excluded under Rule 404(b) the testimony of five of the prosecution's seven witnesses (Ms. Madman, Ms. Tripp, Ms. Henderson, Ms. Jines, and Mr. Wornick).  [*Id.* at 17]  The prosecution's only reasons for calling these witnesses, he contends, were to "disparage [him] personally," to attempt "to prove his character as a drug dealer," and to persuade the jury "that he acted in conformity" with that character.  Aplt. Br. at 18.  He argues that this testimony "obscure[d] the actual issues in the case," "confus[ed] the jury," and "distorted the trial process."  *Id.* at 21.  He therefore requests that we grant him a new trial.  [*Id.*]

We review a district court's admission of evidence under Rule 404(b) for abuse of discretion.[1] *United States v. Davis*, 636 F.3d 1281, 1297 (10th Cir. 2011). "We will not reverse the district court if its decision falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *Id.* (quotations omitted). Even when the court's decision does not meet this standard, we will reverse only if "the error affected a substantial right." *United States v. Levine*, 970 F.2d 681, 688 (10th Cir. 1992).

Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But such evidence is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In assessing the admissibility of 404(b) evidence, we consider four factors:

---

[1]The Government argues that much of our review could be limited to plain error because Mr. Pace failed to contemporaneously object to most of the testimony the district court admitted. [Aple. Br. at 13 n.5] We disagree.

Generally, if an appellant failed to object to the admission of 404(b) evidence at trial, we review the admission for plain error. *See United States v. Parker*, 553 F.3d 1309, 1313 (10th Cir. 2009). We have carved out an exception to this rule, however, when there has been a motion in limine to exclude evidence and "the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge." *United States v. Mejia-Alarcon*, 995 F.2d 982, 986 (10th Cir. 1993). As Mr. Pace correctly notes, the 404(b) issue in this case was fairly presented in pre-trial motions and fully addressed by the district court. [Aplt. Rply. Br. at 3] This process was sufficient to preserve Mr. Pace's objection to the 404(b) testimony.

(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quotations omitted).

Admissibility under Rule 404(b) "is a permissive standard." *Davis*, 636 F.3d at 1298. "If the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (quotation and alteration omitted).

We hold that the district court did not abuse its discretion in allowing the testimony of Mr. Pace's drug transactions. The admission of this evidence was proper under the four-factor test discussed above.

## 1. *Proper Purpose*

The testimony was offered for the proper purpose of proving Mr. Pace's intent. We have repeatedly held that "evidence of past crimes is admissible to establish specific intent, including intent to distribute in a drug trafficking offense." *United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005); *see also United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995) ("This court has repeatedly held that the use of prior drug involvement to show plan, motive or intent in a drug trafficking offense is appropriate."

(quotations omitted)).  The charged crimes in this case occurred in August and October 2009.  [Aplt. Br. at 5]  Collectively, the witnesses' testimony showed a series of drug transactions beginning in 2008 and continuing essentially uninterrupted until Mr. Pace was arrested in January of 2010.  As the Government notes, the transactions were "proximate in time to charged counts, and conducted in a similar manner as those charged counts."  Aple. Br. at 15.  In that respect, the drug transactions established Mr. Pace's intent to distribute, which was an element of three of the counts included in the indictment.  The first factor of the test is therefore met.

### 2. *Relevance*

The testimony was relevant.  Evidence is relevant if it tends to make any fact of consequence in a case "more or less probable."  Fed. R. Evid. 401.  This court "has long recognized the relevance of previous wrongs and crimes in the context of narcotics violations."  *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir. 1989) (quotations omitted); *see also United States v. Wilson*, 107 F.3d 774, 785 (10th Cir. 1997) ("[P]rior narcotics involvement is relevant when that conduct is close in time, highly probative, and similar to the activity with which the defendant is charged." (quotations omitted)).

Here, the witnesses described transactions involving the same type of drug Mr. Pearson allegedly sold to Mr. Pace and occurring over a span of time that included the crimes charged in the indictment.  These facts tend to make numerous matters of consequence in the case—such as Mr. Pace's possession of crack and his intent to distribute crack—more probable.  Thus, the second factor is satisfied.

### 3. *Rule 403 Determination*

It is unclear from the record whether the trial judge made explicit findings to support a Rule 403 ruling. Nonetheless, "[w]e have consistently upheld implicit Rule 403 determinations when the determinations are supported by the record." *United States v. Lazcano-Villalobos*, 175 F.3d 838, 846 (10th Cir. 1999); *see also Wilson*, 107 F.3d at 783 ("[W]e conclude that the district court implicitly considered [Rule 403] when it ruled both at trial and at [a] motion in limine hearing that the evidence was admissible as relevant under Rule 404(b).").

At Mr. Pace's trial, the district court prohibited the prosecution from presenting testimony of Mr. Pace's distribution of drugs before 2008. In so doing, the judge noted he was "required to be mindful of the guidance that our Court of Appeals has provided with respect to temporal proximity of Rule 404(b) evidence." Trial Tr. at 363. The court's "mindful" decision to limit questioning into Mr. Pace's drug sales "reflects a balancing of the prejudicial effect and the probative value of such evidence." *See United States v. Serrata*, 425 F.3d 886, 904 (10th Cir. 2005).

Moreover, much of Mr. Pace's argument amounts to a disagreement with the trial judge regarding the credibility of witnesses and the probative value of the 404(b) testimony.[2] This is insufficient to show that the district court abused its discretion. The

---

[2]For example, Mr. Pace refers to the prosecution's witnesses as "felons (one a murderer), prostitutes, and drug addicts, some of whom were still on probation or in jail at the time of their testimony." Aplt. Br. at 20. The 404(b) evidence, he argues, was "a

Continued . . .

-10-

testimony may have been prejudicial "in the sense that it rebutted [Mr. Pace's] theory of defense," but "such is the nature of evidence establishing an element of the charged crime." *United States v. Mares*, 441 F.3d 1152, 1159 (10th Cir. 2006).

### 4. *Jury Instruction*

The fourth prong of the test also is easily satisfied in this case. The district court gave limiting instructions to the jury at trial and before deliberations. Mr. Pace did not challenge the adequacy of these instructions.

\* \* \*

As a final consideration, we note that Mr. Pace failed to show that, absent the 404(b) testimony, the remainder of the admitted evidence was insufficient to support a conviction. "[A] decision whether to admit or exclude evidence, is considered harmless unless a substantial right of a party is affected." *United States v. Irving*, 665 F.3d 1184, 1209 (10th Cir. 2011) (quotations omitted), *petition for cert. filed* (U.S. Feb. 24, 2012) (No. 11-9057). "An error affecting a substantial right of a party is an error that had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Id.* (quotations omitted).

Mr. Pace acknowledges in his appellate brief the extent of the other evidence against him: "[T]he Government had the FBI surveillance, the . . . wiretaps on Pearson's

---

conglomeration of character evidence designed to show the jury that since all of these witnesses said that [Mr.] Pace dealt crack in the past to them, then he must surely have bought some crack from [Mr.] Pearson." *Id.*

-11-

cell phone, the cell phone records, recordings of the phone calls between Pearson and

Pace, and live testimony from Pearson" and an FBI agent. Aplt. Br. at 21. Mr. Pace

acknowledges that "Pearson was able to provide at least some support for the allegations

outlined in the indictment that Pace possessed crack on August 20, 2009, again on August

21, 2009, and then on October 26, 2009." *Id.* at 9. Thus, even if the 404(b) testimony in

this case had been admitted in error, Mr. Pace failed to demonstrate that the error

"affected a substantial right." *Levine*, 970 F.2d at 688. We therefore have no basis to

reverse his conviction. *See United States v. Roach*, 582 F.3d 1192, 1207 (10th Cir.

2009).

For the foregoing reasons, we hold that the district court did not abuse its

discretion in admitting the 404(b) testimony.

**B. *Sentencing***

Mr. Pace argues that the district court erred in calculating the drug quantity

attributable to him for sentencing purposes because it relied on testimony from witnesses

about the quantity of crack they received from Mr. Pace. From this testimony, the court

concluded that Mr. Pace was "accountable for far more than 840 grams of cocaine base."[3]

---

[3]The district court's statement refers to Mr. Pace's base offense level of 34. The Guidelines specify a base offense level of 34 for possession of at least 840 grams but less than 2.8 kilograms of cocaine base. USSG § 2D1.1(c)(3). At the sentencing hearing, the prosecution "assert[ed] that . . . 1.5 kilograms of crack cocaine [was] a very conservative estimate" for the amount attributable to Mr. Pace. Sent. Tr. at 70.

Continued . . .

Sent. Tr. at 77.

Mr. Pace contends that this court should "vacate the factual findings made by the district court . . . and confine the analysis to the drug quantity attributable . . . from Pearson only." Aplt. Br. at 24. In other words, because he was charged based on drug transactions with Mr. Pearson, Mr. Pace argues that his sentence should be based solely on the quantity of drugs involved in those transactions. [*Id.* at 22–23] Mr. Pace calculates the crack attributable to these transactions as 146.2 grams. If the district court had used this figure, he argues, the proper Guidelines range for his possession-with-intent-to-distribute convictions would have been 108–135 months instead of 210–262 months. [*Id.* at 27]

We review a district court's sentence for procedural reasonableness under an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 46 (2007). However, when assessing a district court's calculation of the appropriate Guidelines range, we "review its factual findings, including its determination of the quantity of drugs for which the defendant is held accountable under the Guidelines for clear error." *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008). The district court's calculation of drug quantity for sentencing purposes is not clearly erroneous unless the calculation is "without factual support in the record or we are left with the definite and firm conviction

---

Mr. Pace's total offense level of 36 also included two points for his maintenance of numerous premises for the purpose of distributing a controlled substance. USSG § 2D1.1(b)(12).

that a mistake has been made." *Id.* (quotations omitted).

The Guidelines authorize a sentencing court to consider "relevant conduct" in determining a defendant's base offense level, *see* USSG § 1B1.3, "even if the defendant was never charged with that additional conduct and the jury never found him guilty of it." *United States v. Caldwell*, 585 F.3d 1347, 1350 (10th Cir. 2009). "Relevant conduct" includes actions that are "part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2).

"Offenses may qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Caldwell*, 585 F.3d at 1350 (quotations omitted). To determine whether offenses are part of the same course of conduct as the offense of conviction, we apply a three-factor test that considers (1) "the degree of similarity of the offenses," (2) "the regularity (repetitions) of the offenses," and (3) "the time interval between the offenses." *United States v. Damato*, __ F.3d __, 2012 WL 561018, at *5 (10th Cir. Feb. 22, 2012). If one of these factors is missing, "a stronger presence of at least one of the other factors is required." USSG § 1B1.3 cmt. n.9(B).

Mr. Pace argues that the district court erred in calculating the drug quantity attributable to him based on witness testimony of drug transactions that did not include Mr. Pearson. It is unclear, however, whether he contends that these drug transactions were not part of the "same course of conduct" as his offenses of conviction. To the

-14-

extent that he makes this argument, we hold that the drug transactions were part of the same course of conduct as his offenses of conviction under the three-factor test discussed above.

First, the drug transactions were similar to his offenses of conviction. They involved the intentional distribution of crack cocaine, the same drug Mr. Pace was convicted of acquiring and possessing with intent to distribute. Second, the testimony concerned regularly occurring transactions. Many of the witnesses testified to purchasing crack from Mr. Pace on a daily basis for an extended period. Third, although the testimony dated back to early 2008,[4] collectively it shows a nearly uninterrupted series of crack distributions up to and beyond the time of the charged conduct. In contrast, we have held that even a six-month break between narcotics sales is "insufficient to establish an interruption in [a defendant's] course of conduct." *United States v. Moore*, 130 F.3d

---

[4]Ms. Madman testified about additional drug-related conduct dating back even further, but this testimony was introduced by Mr. Pace's counsel during cross-examination. Police arrested Ms. Madman in August 2007 after finding several grams of crack in a briefcase in the hotel room where she was staying. [Tr. at 56–57] She had initially told investigators that the drugs were hers, but during cross-examination at Mr. Pace's trial she explained that the briefcase and the drugs belonged to Mr. Pace. [*Id.* at 57] At sentencing, the district court credited her testimony and attributed 16 grams of crack from the briefcase to Mr. Pace. [Sent. Tr. at 74]

We need not decide whether this incident constituted relevant conduct for sentencing purposes, however, because the court found that Mr. Pace was accountable for nearly 1.5 kilograms of crack by virtue of his other transactions. *See* Sent. Tr. at 73–77 (attributing 460, 942, 75, 24, and 7 grams of crack to Mr. Pace from the testimony of Ms. Madman, Ms. Tripp, Ms. Henderson, Ms. Jines, and Mr. Wornick, respectively). Thus, even excluding the 16 grams from the briefcase, the court found that Mr. Pace was accountable for much more than the 840 grams of crack necessary to establish a base offense level of 34. [*See id.* at 77]

1414, 1419 (10th Cir. 1997).

We conclude that the drug transactions described by the witnesses qualify as the "same course of conduct" as Mr. Pace's offenses of conviction. *See* USSG § 1B1.3(a)(2).

In addition, Mr. Pace argues that the court erred because it based its drug quantity determination "entirely upon relevant conduct and not upon the crimes for which he was convicted."[5] [Aplt. Br. at 25] We disagree with this reading of the district court's findings.

We need not decide whether a court may rely exclusively on relevant conduct outside the offense of conviction in calculating the drug quantity attributable to a defendant at sentencing. The record in this case indicates the district court did not do so. The court relied on testimony about drug possession and distribution over a period that *included Mr. Pace's offenses of conviction.*

The indictment charged that, on or about August 20-21 and October 26, 2009, Mr.

---

[5]Mr. Pace also challenges the district court's conclusions regarding the witnesses' credibility. [*See* Aplt. Br. at 23] He acknowledges that the district court is "in a position to judge the credibility of the witnesses," but he argues that the witnesses in this case "were so patently lacking in courtroom credibility as to be completely unworthy of belief." Aplt. Br. at 23. He bases this criticism on his allegation that the witnesses had previous criminal convictions, all had used crack, and most had worked as prostitutes. [*Id.*]

This court has held, however, that "the credibility of a witness whose testimony is relied upon at sentencing is for the sentencing court to analyze." *United States v. Ivy*, 83 F.3d 1266, 1289 (10th Cir. 1996) (quotations omitted). The trial judge in this case spoke directly to this issue at sentencing, "substantially credit[ing] the testimony of the witnesses who testified as called by the government." Sent. Tr. at 73. Mr. Pace's disagreement with the court's credibility determinations does not render them clearly erroneous.

Pace possessed crack with intent to distribute. Mr. Wornick testified that he first began purchasing crack from Mr. Pace around September 2009 and that he purchased crack from him daily until Mr. Pace's arrest in January 2010. [Tr. at 401–11]. Ms. Jines testified that she took others to Mr. Pace's house to buy crack until August 2009. [Tr. at 373] Thus, the court's calculation was based on testimony about relevant *and* charged conduct.[6]

We conclude that the district court's calculation of drugs attributable to Mr. Pace has support in the record and is not clearly erroneous.

### III. CONCLUSION

For the foregoing reasons, we affirm Mr. Pace's conviction and sentence.


ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

---

[6]Mr. Pace takes issue with the district court's decision to disregard crack cocaine quantities sold by Mr. Pearson. [*See* Aplt. Br. at 24] But the court's purpose in doing so was to *protect* Mr. Pace by avoiding double counting—in other words, to ensure that the crack Mr. Pearson sold to Mr. Pace, and which Mr. Pace then distributed to the various witnesses, was not counted twice in the overall amount attributable to Mr. Pace. This method, however, did not discount drug quantities attributable to Mr. Pace during the charged periods. At least two witnesses—Mr. Wornick and Ms. Jines—testified about Mr. Pace's possession and distribution of drugs during the charged period.